UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Equity Bank,                                             Civ. No. 12-2891 (PAM/JJG)

                                   Plaintiff,

v.

U.S. Bank National Association,

                                   Defendant.
_____          **MEMORANDUM AND ORDER**

U.S. Bank National Association,                 Civ. No. 12-2023 (PAM/JJG)

                                   Plaintiff,
v.

Equity Bank,

                                   Defendant.

This matter is before the Court on U.S. Bank National Association's Motion to Dismiss Count III of the Amended Complaint. For the reasons that follow, the Motion is denied.

**BACKGROUND**

In 2007, U.S. Bank, Equity Bank, two Kansas counties, and UMB Bank (as trustee) entered into an agreement under which the State of Kansas was authorized to establish a local residential housing finance plan to issue revenue bonds, the proceeds from which would be

used to purchase mortgage loans. The agreement is referred to as the "Kansas Agreement."

Under the Kansas Agreement, Equity Bank was to sell to U.S. Bank mortgage loans that were approved as eligible Freddie Mac loans. In July and October 2007, Equity Bank sold U.S. Bank four loans under the Agreement, which U.S. Bank in turn sold to Freddie Mac. In 2012, U.S. Bank demanded that Equity Bank repurchase the loans because the underlying documentation for the loans allegedly did not meet agency regulations and contained errors and inconsistencies. Equity Bank refused to repurchase the loans because it contends that U.S. Bank did not meet the prerequisites for the repurchase demand; specifically, Equity Bank alleges that Freddie Mac still owned the loans and that U.S. Bank had not suffered losses related to the loans. (Am. Compl. (Docket No. 57) ¶¶ 14-16.)

In 2010, U.S. Bank and Equity Bank entered into a separate and unrelated agreement called the Correspondent and Mortgage Purchase Agreement, under which Equity Bank agreed to offer U.S. Bank conventional mortgage loan sales. (Id. ¶¶ 17, 20.) Under the Correspondent Agreement, Equity Bank sold U.S. Bank over $12 million in loans between September 2010 and August 2012. (Id. ¶ 18.)

Equity Bank alleges that as punishment for not repurchasing the loans under the Kansas Agreement, U.S. Bank improperly and punitively deducted premiums owed to Equity Bank under the Correspondent Agreement. (Id. ¶ 22.) U.S. Bank also informed Equity Bank that it would continue to deduct premiums owed to Equity Bank as a set-off for the loans at issue under the Kansas Agreement. (Id. ¶ 24.) U.S. Bank further notified Equity Bank that it would not honor the Correspondent Agreement going forward. (Id. ¶¶ 23, 25, 30-31.)

Equity Bank alleges that U.S. Bank's "purported" rationale for doing so was "its desire to force Equity Bank to repurchase the . . . loans" and "to punish Equity Bank for its refusal to repurchase these loans." (Id. ¶ 23.)

In July 2012, just before U.S. Bank unilaterally decided to withhold payments owed to Equity Bank, Equity Bank merged with First Community Bank, which also did a substantial amount of loan business with U.S. Bank. In August 2012, U.S. Bank notified First Community Bank that it would not continue to do business with First Community because of the pending merger with Equity Bank. (Id. ¶ 31.) Equity Bank alleges that U.S. Bank was motivated to do so in order to further punish Equity Bank for its refusal to repurchase the loans under the Kansas Agreement. (Id. ¶ 30.) Equity Bank alleges that its business declined dramatically due to U.S. Bank's actions. (Id. ¶ 34.)

Equity Bank and U.S. Bank then sued each other; U.S. Bank filed suit in this District and Equity Bank filed suit in federal court in Kansas. The Kansas court transferred the Equity Bank case to this District and the Court consolidated the cases. (See Docket Nos. 17, 44 (Case No. 12-2891).)

At issue here is Equity Bank's Amended Complaint in which Equity Bank raises three claims. Count I seeks a declaration that Equity Bank had no obligation to repurchase the loans at issue under the Kansas Agreement, Count II alleges breach of the Correspondent Agreement, and Count III alleges breach of the implied covenant of good faith and fair dealing in the Kansas Agreement and Correspondent Agreement. U.S. Bank has moved to dismiss Count III only.

**DISCUSSION**

For purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court takes all facts alleged in the complaint as true. See Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court must construe the factual allegations in the complaint and reasonable inferences arising from the complaint favorably to the plaintiff and will grant a motion to dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986) (citations omitted). The complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

U.S. Bank first argues that Count III is untenable because Equity Bank does not allege that U.S. Bank's actions rendered Equity Bank unable to perform under either contract. U.S. Bank next argues that Equity Bank failed to allege that U.S. Bank had a bad-faith motive for its actions. Finally, U.S. Bank contends that Equity Bank may not plead its good faith and fair dealing claim separate from its breach-of-contract claim. Each of U.S. Bank's arguments is unavailing.

First, despite U.S. Bank's protestations to the contrary, the law does not require Equity Bank to plead that U.S. Bank's actions hindered its performance. Many cases involve such circumstances, but the law provides a broader umbrella for implied covenant claims. Relevant here, Minnesota law recognizes implied covenant cases where the plaintiff alleges bad faith or the unreasonable exercise of contractual rights. Team Nursing Servs., Inc. v.

Evangelical Lutheran Good Samaritan Soc'y, 433 F.3d 637, 641-42 (8th Cir. 2006); Cox v. Mortg. Elec. Registration Sys., Inc., 685 F.3d 663, 671 (8th Cir. 2012). Kansas law, which likely applies to the Kansas Agreement, is in accord:

> Kansas courts imply a duty of good faith and fair dealing in every contract. This means that parties should not intentionally or purposely . . . do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Conduct which amounts to "bad faith" includes evasion of the spirit of the bargain, abuse of a power to terminate the contract, and interference with or failure to cooperate with the other party's performance

Bank of Am., N.A. v. Kansas CVS Pharmacy, LLC, No. 11-2481, 2012 WL 4442628 (D. Kan. Sept. 26, 2012) (citations omitted).

Second, Equity Bank has met its pleading obligation. Equity Bank specifically alleges that U.S. Bank acted in bad faith and for purposes of retribution in refusing to pay Equity Bank under the Correspondent Agreement and in announcing its repudiation of that agreement. (Am. Compl. ¶¶ 22-25, 30-31.) Equity Bank also alleges that it was financially harmed as a result of U.S. Bank's conduct. (Id. ¶¶ 22, 25, 34, 58.) Under these circumstances, Equity Bank has sufficiently pled a claim under the implied covenant of good faith and fair dealing.

Third, Minnesota law permits alternative claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Columbia Cas. Co. v. 3M Co., 814 N.W.2d 33, 37 (Minn. Ct. App. 2012). Accordingly, Equity Bank may plead both its breach-of-contract and implied covenant claims.

**CONCLUSION**

U.S. Bank has failed to establish that Equity Bank's claim for breach of the implied covenant of good faith and fair dealing is not legally viable. Accordingly, **IT IS HEREBY ORDERED that** U.S. Bank's Motion to Dismiss (Docket No. 64) is **DENIED**.


Dated: October 28, 2013

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge